**AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**Civil Action No. 00–940 (RWR).**

United States District Court, District of Columbia.

Sept. 4, 2007.

Jerry Eugene Rothrock, Akin, Gump, Strauss, Hauer & Feld, L.L.P., Washington, DC, for Plaintiff.

Diane M. Sullivan, United States Attorney's Office, Washington, DC, for Defendant.

## MEMORANDUM OPINION AND ORDER

ROBERTS, District Judge.

Plaintiff Akin, Gump, Strauss, Hauer & Feld, L.L.P. ("Akin Gump") sued the United States Department of Justice ("DOJ"), challenging DOJ's decision to withhold documents that Akin Gump requested pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"). Both parties moved for summary judgment. Because DOJ's disclosures in this case do not provide (1) an adequate description of each discrete redaction, (2) a specific citation to and explanation of the authority to refuse to disclose that is correlated with each discrete redaction, and (3) sufficient information to determine whether all reasonably segregable information has been segregated and disclosed, both motions for summary judgment will be denied and DOJ will be directed to file disclosures that fairly meet the requirements of *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973).

## BACKGROUND

In connection with an action pending in the federal district court in Colorado,[1] Jack J. Grynberg was ordered to produce documents for the defendants in that case ("Grynberg defendants") that had been delivered on his behalf to the United States Attorney's Office for the District of Colorado. (Pl.'s Mot. Summ. J., Pl.'s Stmt. Mat. Facts ("Pl.'s Stmt.") ¶ 2.) Concerned that not all relevant records had been produced, the Grynberg defendants requested unredacted copies of those records directly from the U.S. Attorney's Office. (Pl.'s Stmt., Ex. B, Aff. Timothy M. Rastello ("Rastello Aff.") ¶¶ 4–5; Ex. C, Aff. Michael L. Beatty ("Beatty Aff.") ¶ 4.) In response, the U.S. Attorney's Office delivered copies of the requested documents to Grynberg's counsel, who then provided the copies to the Grynberg defendants. (Def.'s Mot. Summ. J., Mem. of P. & A. ("Def.'s Mot. Summ. J.") at 2.)

This suit arises out of a FOIA request made by Akin Gump to DOJ for copies of the documents at issue, along with any related correspondence between Grynberg and the local U.S. Attorney's Office. (Pl.'s Mot. Summ. J., Mem. of P. & A. ("Pl.'s Mot. Summ. J.") at 4.) DOJ denied Akin Gump's request, claiming that the requested records pertained to a third-party individual and that since Akin Gump failed to provide a waiver allowing it to release this information, disclosure would violate the Privacy Act, 5 U.S.C. § 552a. (Def.'s Mot. Summ. J. at 6.) DOJ also invoked FOIA Exemptions 6 and 7, 5 U.S.C. §§ 552(b)(6), (7)(C), deeming the records generally exempt from disclosure while admitting that it had not yet reviewed the requested records in detail. (Def.'s Mot. Summ. J., Decl. John F. Boseker ("Boseker Decl.") ¶ 6; Ex. B.) At some later time, DOJ identified and advised Akin Gump of approximately 832 pages that were respon-

---

**1.** *United States ex rel. Grynberg v. KN Energy, Inc.,* Civil Action No. 92–2000 (D.Col.) (*"KN Energy "*) (later proceeding reported at *In re:* *Natural Gas Royalties Qui Tam Litig.,* 467 F.Supp.2d 1117 (D.Wyo.2006)).

sive to the request but did not disclose the documents. (Boseker Decl. ¶ 7.) Akin Gump filed an administrative appeal of the initial decision which was subsequently denied. (Def.'s Mot. Summ. J., Ex. C.) After further review of the documents, DOJ informed Akin Gump of additional applicable exemptions that justified non-disclosure. (*Id.* ¶¶ 10–11.)

DOJ argues not only that the Privacy Act precludes disclosure of the requested documents, but also that the documents fall within the protection of up to six FOIA exemptions.[2] Akin Gump disputes these claims, and argues alternatively that DOJ's submission of the documents to the Grynberg Defendants constitutes a waiver of this protection, and DOJ should be ordered to release the requested information.

### DISCUSSION

■ Summary judgment is appropriate when there exists no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). The burden falls on the moving party to provide a sufficient factual record that demonstrates the absence of such a genuine issue of material fact. *See Beard v. Banks,* — U.S. —, —, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006). A court must draw all reasonable inferences from the evidentiary record in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). In a FOIA suit, an agency is entitled to summary judgment upon demonstrating that no material facts are in dispute and that all information that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of State,* 257 F.3d 828, 833 (D.C.Cir.2001); *Weisberg v. Dep't of Justice,* 627 F.2d 365, 368 (D.C.Cir.1980). A district court must conduct *de novo* review of the record in a FOIA case, and the agency resisting disclosure bears the burden of persuasion in defending its action. 5 U.S.C. § 552(a)(4)(B); *see also Long v. Dep't of Justice,* 450 F.Supp.2d 42, 53 (D.D.C.2006).

■ The FOIA requires agencies to comply with requests to make their records available to the public, unless information is exempted by clear statutory language. 5 U.S.C. §§ 552(a), (b); *Oglesby v. Dep't of Army,* 79 F.3d 1172, 1176 (D.C.Cir.1996). Although there is a "strong presumption in favor of disclosure," *Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 116 L.Ed.2d 526 (1991), there are nine exemptions to disclosure set forth in 5 U.S.C. § 552(b). These exemptions are to be construed as narrowly as possible to provide the maximum access to agency information based on the overall purpose of the Act. *Vaughn,* 484 F.2d at 823. Here, DOJ must show that there is no genuine issue as to whether it properly invoked the statutory exemptions authorized by §§ 552(b)(5), (b)(6), (b)(7)(C), and

---

**2.** In initially denying Akin Gump's request and appeal, DOJ asserted Exemptions 6 and 7(C), which protect documents whose disclosure may constitute undue invasions of privacy. DOJ later cited Exemptions 5 (materials available only to parties in litigation with the agency) and 7(D) (information arising from confidential sources) to justify categorical exemption from disclosure. DOJ also claims Exemptions 4 (trade secrets) and 9 (geological

and geophysical information) to justify partial exemptions for the documents and states that it will provide further justification for these exemptions if the rationale for the other cited exemptions is deemed insufficient. (Boseker Decl. ¶¶ 28–29.) Because additional information is needed regarding DOJ's invocation of Exemptions 5, 6, 7(C) and 7(D), consideration of the applicability of Exemptions 4 and 9 will be deferred.

(b)(7)(D) to withhold information, and that all non-exempt information that is reasonably segregable has been segregated and disclosed.

 Because the party requesting disclosure is at a disadvantage to argue misapplication of an exemption given that it cannot know the precise contents of the documents withheld, a factual dispute may arise regarding whether the documents actually fit within the cited exemptions. *Vaughn,* 484 F.2d at 823–24. To enable the requesting party an opportunity to effectively challenge the applicability of the exemption and the court to properly assess its validity, the party in possession of the materials must explain the specific reason for the agency's nondisclosure. *Id.* at 826; *see, e.g., Oglesby,* 79 F.3d at 1176 ("The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection."). This explanation may include a detailed description of each document being withheld and take the form of a *Vaughn* index. *Students Against Genocide,* 257 F.3d at 832. Where, as here, " 'a claimed FOIA exemption consists of a generic exclusion, dependent upon the category of records rather than the subject matter which each individual record contains, resort to a *Vaughn* index is futile[,]' " *Maydak v. Dep't of Justice,* 218 F.3d 760, 766 (D.C.Cir.2000) (quoting *Church of Scientology v. Internal Revenue Service,* 792 F.2d 146, 152 (D.C.Cir.1986)), and the government may satisfy its burden by other means. *Voinche v. Fed. Bureau of Investigation,* 412 F.Supp.2d 60, 65 (D.D.C.2006) (noting that because "courts have repeatedly held that it is the function of a *Vaughn* index rather than its form that is important, ... an agency does not have to provide an index per se"). Regardless of the form of the government's declaration, it must show why exemption is appropriate and conclusory statements and generalized claims of exemption are insufficient to justify withholding. *Vaughn,* 484 F.2d at 826; *see also Mead Data Cent., Inc. v. Dep't of Air Force,* 566 F.2d 242, 251 (D.C.Cir.1977) ("[T]he burden which the FOIA specifically places on the Government to show that the information withheld is exempt from disclosure cannot be satisfied by the sweeping and conclusory citation of an exemption...."). Where disclosures are not sufficiently detailed to permit a meaningful *de novo* review, a court may order the agency to submit more detailed disclosures. *Voinche,* 412 F.Supp.2d at 65.

 Furthermore, because "[t]he focus of the FOIA is information, not documents, ... an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.... [N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data,* 566 F.2d at 260; *see also* 5 U.S.C. § 552(b) (requiring disclosure of "any reasonably segregable portion" of an otherwise exempt record). If the government argues that none of the material in a document is segregable, it must provide a reasonably detailed explanation for this claim. "However, the justification need not be so detailed so as to compromise the nature of the withheld information." *Voinche,* 412 F.Supp.2d at 70.

## I. THE PRIVACY ACT

 DOJ first argues that the Privacy Act bars disclosure because the requested records pertain to a third-party individual from whom Akin Gump has not received prior written consent for release. (Def.'s Mot. Summ. J. at 5–6.) The Privacy Act precludes an agency from disclosing

any record [of information about an individual] which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, unless disclosure of the record would be ... (2) required under section 552 of this title [FOIA].

5 U.S.C. §§ 552a(a)(4), (b)(2).

■ Invoking the Privacy Act to refuse a FOIA request does not complete the analysis that DOJ must conduct. That Act is not a FOIA exemption upon which DOJ can rely, and the FOIA sometimes mandates release of information that an agency might otherwise be prohibited from releasing under the Privacy Act. *See Dep't of Defense v. Fed. Labor Relations Auth.*, 510 U.S. 487, 491, 114 S.Ct. 1006, 127 L.Ed.2d 325 (1994) ("[The Privacy] Act does not bar disclosure of personal information if disclosure would be required under section 552 of ... the Freedom of Information Act[.]") (internal quotation omitted). Whether FOIA mandates disclosure or excuses it under exemptions DOJ asserts is discussed below.

## II. FOIA EXEMPTIONS

### 1. Exemption 5

■ Exemption 5 provides that "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency" are exempt from disclosure under the FOIA. 5 U.S.C. § 552(b)(5). The exemption is intended to protect the decision-making processes of government agencies and to encourage

open discussion of legal and policy issues. *Leadership Conf. on Civil Rights v. Gonzales*, 404 F.Supp.2d 246, 253 (D.D.C.2005). For a document to be exempt under this provision, its source must be a government agency, *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8, 121 S.Ct. 1060, 149 L.Ed.2d 87 (2001), and it must fall within the ambit of documents " 'normally privileged in the civil discovery context.' " *Leadership Conf.*, 404 F.Supp.2d at 253 (quoting *Nat'l Labor Relations Bd. v. Sears, Roebuck & Co.*, 421 U.S. 132, 148, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)). Those privileges include attorney-client privilege, work product, and the deliberative process privilege. *Klamath Water Users*, 532 U.S. at 8, 121 S.Ct. 1060.

■ DOJ maintains that all of the requested information is exempt under the attorney-client and work product privilege because *KN Energy* is a False Claims Act qui tam case and the U.S. Attorney's Office's submission of the documents to Grynberg's counsel occurred in an attorney-client context.[3] When information is shared between the relator and the United States, the attorney-client and work product privileges are not waived because any communications are conducted in furtherance of joint prosecution and on the basis of common interests. *See United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am.*, Civil Action No. 99–3298(RCL), 2004 WL 2009413, *3–4 (D.D.C. May 17, 2004).

■ There are no privileged communications involved here because the government released documents to the Grynberg defendants, a third party to the govern-

---

**3.** Akin Gump disputes that *KN Energy* is a qui tam case and provides an affidavit stating that Grynberg's lawsuit was not filed under the False Claims Act. (Pl.'s Mem. of P. & A. in Reply to Def.'s Opp'n ("Pl.'s Reply"), Ex. A., Suppl. Aff. of Michael Beatty ¶ 4.) However, because DOJ has not provided a detailed description of the requested documents, no determination will be made about the nature of the underlying lawsuit.

ment-relator relationship, via Grynberg's attorney. The information was not released only to Grynberg as a co-party and DOJ does not allege that the government asked Grynberg's attorney to ensure confidentiality. Instead, the government handed over the documents on the assumption that they would be passed on. (*See* Def.'s Mot. Summ. J. at 17 ("[T]he unredacted documents were given to the Grynberg Law Firm [by the U.S. Attorney's Office] in order that Mr. Grynberg could comply with the Court's Order to turn over documents to the [Grynberg] defendants.").)

■ DOJ also has not made the required showing under *Vaughn* to justify application of this exemption. All subject records are fully withheld without any description of their content to determine if generic exclusion is appropriate. Without more detailed information, there is no basis for evaluating whether the withheld material properly falls within the exemption. The only effort made to justify invocation of this exemption is the submission of a declaration from John Boseker. The declaration does not provide particularized information about the exact nature of the documents and which ones, if any, were created by the government in anticipation of litigation. (*See* Boseker Decl. ¶¶ 25–26 (describing the documents generally as investigation files of the U.S. Attorney's Office without specifying the exact nature of these materials).) The broad and conclusory statements provided in the Boseker declaration do not justify invoking Exemption 5 to categorically exempt the requested documents. *See Oglesby v. Dep't of Justice,* Civil Action No. 02–603(RWR), 2007 WL 625852, at * 2 (D.D.C. Feb.27, 2007) ("An agency's FOIA response must be sufficiently precise and explanatory that a court can 'effectively and efficiently ... evaluate the factual nature of disputed in-

formation.' " (quoting *Vaughn,* 484 F.2d at 826)).

### 2. Exemption 6

DOJ also contends that the requested information is categorically exempt under Exemption 6 because it pertains to a particular individual identifiable in the records and none of the information can be segregated. (Boseker Decl. ¶ 17.) Additionally, DOJ alleges that the privacy rights that would be invaded by disclosure outweigh any public interest in the documents. (Def.'s Reply to Pl.'s Opp'n ("Def.'s Reply") at 3.)

■ Exemption 6 of the FOIA provides protection against disclosure of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(6). Congress' primary purpose in drafting Exemption 6 was to "provide for confidentiality of personal matters." *Dep't of State v. Wash. Post Co.,* 456 U.S. 595, 600, 102 S.Ct. 1957, 72 L.Ed.2d 358 (1982) (internal quotations omitted). Once the threshold requirement—the information's location in personnel or medical files—has been established, the inquiry turns to whether the disclosure of the records would constitute a clearly unwarranted invasion of privacy. *Leadership Conf.,* 404 F.Supp.2d at 256. A court must then undertake a balancing analysis of the respective weight of the privacy interest with the " 'presumption in favor of disclosure [that] is as strong as can be found anywhere in the Act.' " *Nat'l Ass'n of Home Builders v. Norton,* 309 F.3d 26, 32 (D.C.Cir.2002) (quoting *Wash. Post Co. v. Dep't of Health & Human Servs.,* 690 F.2d 252, 261 (D.C.Cir.1982)).

■ Although it is unclear whether the requested records pass the minimum threshold of being "personnel and medical files and similar files" given the lack of

information provided about these documents, the key question is whether Grynberg's interest in privacy outweighs the FOIA's "basic policy of opening agency action to the light of public scrutiny." *Long*, 450 F.Supp.2d at 62 (internal quotations omitted). However, not every incidental invasion of privacy is protected by Exemption 6; only those invasions that implicate private personal details may be precluded. *Cf. Fed. Labor Relations Auth.*, 510 U.S. at 500, 114 S.Ct. 1006 (explaining that the relevant privacy interest is an "individual's interest in controlling the dissemination of information regarding personal matters"). Thus, for such information to be protected, it must " 'compromise a substantial, as opposed to a *de minimis*, privacy interest.' " *Nat'l Ass'n of Home Builders*, 309 F.3d at 33 (quoting *Nat'l Ass'n of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989)).

■ The "public interest" inquiry requires consideration of whether disclosure would " 'contribute significantly to public understanding of the operations or activities of government.' " *Long*, 450 F.Supp.2d at 63 (quoting *Fed. Labor Relations Auth.*, 510 U.S. at 495, 114 S.Ct. 1006). When the material in the government's control is a compilation of information about private citizens, rather than a record of government actions, there is little legitimate public interest that would outweigh the invasion of privacy because the information reveals little or nothing about an agency's own conduct. *See Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 780, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (explaining that when the requested information is not a record of " 'what the Government is up to,' the privacy interest ... is in fact at its apex while the FOIA-based public interest is at its nadir").

■ DOJ has failed to meet its initial burden of justifying the use of the exemption because it has not proven that Grynberg's substantial privacy interest will be violated or proven the extent to which this interest may be invaded by disclosure. The Boseker declaration contains only a conclusory statement that the "release of this information was determined to constitute a clearly unwarranted invasion of the personal privacy of Mr. Grynberg and all other third party individuals in a manner that could subject such individuals to harassment" (Boseker Decl. ¶ 17), without describing the nature of the information that warrants privacy or establishing that nothing in these records is reasonably segregable. Even if a substantial privacy invasion is involved, DOJ has not shown that it is entitled to categorically withhold the documents under Exemption 6 because it has not provided information describing, to the fullest extent possible, the content of the requested information, *see Oglesby*, 2007 WL 625852, at *5 (rejecting an FBI declaration that did not describe the "content of either whole documents or portions withheld"), or a proper segregability analysis that cites to specific documents as non-segregable. *Voinche*, 412 F.Supp.2d at 70.

3. Exemption 7(C)

Similarly, DOJ argues that all the requested information can be categorically withheld under Exemption 7(C) because it was compiled for law enforcement purposes and identifies third parties such that disclosure would result in an invasion of their privacy. (Boseker Decl. ¶ 14.)

■ The FOIA protects the disclosure of "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... (C) could reasonably be expected to consti-

tute an unwarranted invasion of personal privacy[.]" 5 U.S.C. § 552(b)(7)(C). Like Exemption 6, Exemption 7(C) also protects against privacy intrusions by allowing agencies to withhold documents that reveal the identities of suspects and others of investigatory interest. *Leadership Conf.*, 404 F.Supp.2d at 256 (citing *Reporters Comm.*, 489 U.S. at 780, 109 S.Ct. 1468). However, the standard for evaluating an alleged privacy invasion due to the disclosure of records compiled for law enforcement purposes is broader than that applicable to personnel, medical and similar files in two respects. First, whereas Exemption 6 requires that the invasion of privacy be "clearly unwarranted," Exemption 7(C) simply requires that the invasion be "unwarranted." *See Reporters Comm.*, 489 U.S. at 756, 109 S.Ct. 1468. Second, Exemption 6 refers to disclosures that "would constitute" an invasion of privacy, while Exemption 7(C) encompasses any disclosure that "could reasonably, be expected to constitute" such an invasion. *Id.* Despite these distinctions, the general balancing test applied to determine the extent of the privacy invasion is the same as that under Exemption 6. *Long*, 450 F.Supp.2d at 63 (stating that the D.C. Circuit " 'has deemed the privacy inquiry of Exemptions 6 and 7(C) to be essentially the same' " (quoting *Judicial Watch, Inc. v. Dep't of Justice*, 365 F.3d 1108, 1125 (D.C.Cir. 2004))).

 While this exemption provides more protection for information compiled for law enforcement purposes than that provided for personnel and similar matters, DOJ has still not met its burden. Although it is uncontested that at least some of the requested information was compiled for the enforcement of a civil litigation matter, DOJ must prove that it is reasonably expected that disclosure would result in an unwarranted invasion of privacy. Notwithstanding the lowered threshold of privacy required, a categorical withholding under Exemption 7(C) cannot be justified without further clarification of the subject matter of the records.[4]

### 4. Exemption 7(D)

Finally, DOJ contends that all of the requested information is categorically exempt from disclosure under Exemption 7(D) because it was assembled for law enforcement purposes and was provided by a confidential source. (Boseker Decl. ¶ 18.)

 The FOIA exempts the disclosure of

records or information compiled for law enforcement purposes, but only to the extent that the production of such law

---

**4.** DOJ claims that *SafeCard Servs., Inc. v. SEC* allows the categorical withholding of information under Exemption 7(C) if the information identifies third parties in law enforcement records and disclosure of such information is not necessary "to confirm or refute compelling evidence the agency is engaged in illegal activity." 926 F.2d 1197, 1206 (D.C.Cir.1991). DOJ asserts that because Akin Gump has not claimed that the agency is involved in illegal activities, there is no legitimate public interest and categorical withholding is justified. (Def.'s Reply at 4.) While *SafeCard* permits an agency to categorically exempt and withhold the names and addresses of private individu-

als appearing in files within the scope of Exemption 7(C), so as not to reveal the identities of individuals who are subjects, witnesses, or informants in law enforcement investigations, *SafeCard* has not been interpreted to permit the agency to exempt from disclosure *all* the material in an investigatory record. *See Nation Magazine, Wash. Bureau v. Customs Serv.*, 71 F.3d 885, 896 (D.C.Cir.1995). As a general rule, *SafeCard* directs an agency to redact the names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons. *Id.* at 896.

enforcement records or information ... (D) could reasonably be expected to disclose the identity of a confidential source ..., and, in the case of a record or information compiled by criminal law enforcement authority in the course of a criminal investigation or by an agency conducting a lawful national security intelligence investigation, information furnished by a confidential source....

5 U.S.C. § 552(b)(7). Under Exemption 7(D), an agency must show that an individual provided information to the government for the purpose of a criminal or national security investigation under either (1) an express assurance of confidentiality or (2) under circumstances that support an implied assurance of confidentiality. *See Piper v. Dep't of Justice*, 294 F.Supp.2d 16, 28 (D.D.C.2003).

 DOJ misconstrues the application of this exemption. Although it can be used to protect the identity of a confidential source of information provided for law enforcement purposes, the language and structure of 5 U.S.C. § 552(b)(7)(D) explicitly require that the information relate to a criminal or national security investigation. Here, DOJ does not claim that the documents are material to either type of investigation. While the exemption permits redacting the identity of the confidential source, DOJ has not established that one or more confidential sources provided all of the information requested, thus justifying the use of Exemption 7(D) in this situation.

## III. GENERAL WAIVER OF FOIA EXEMPTIONS

Akin Gump argues that even if some of the information is categorically exempt, DOJ waived the right to claim such exemptions upon the release of unredacted versions of the records to the Grynberg defendants, a third party. (Pl.'s Mem. of P.

& A. in Reply to Def.'s Opp'n ("Pl.'s Reply") at 7.) Additionally, Akin Gump identifies a second instance of disclosure of allegedly the same documents to a third party by the Department of the Interior. (Pl.'s Supp. Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Suppl. Mem.") at 8.)

However, Akin Gump has not persuasively demonstrated that DOJ generally waived its right to claim any exemptions due to prior submission of the requested documents. Although DOJ waived its attorney-client privilege under Exemption 5 and did not justify invoking Exemption 7(D), DOJ has not clearly waived its right to invoke Exemptions 6, 7(C) or 7(D). "[T]he fact that some of the personal information contained in these records already has been made public in some form does not eliminate the privacy interest in avoiding further disclosure by the Government." *Long*, 450 F.Supp.2d at 68 (citing *Reporters Comm.*, 489 U.S. at 762–63, 109 S.Ct. 1468); *see also Leadership Conf.*, 404 F.Supp.2d at 258 (explaining that "substantial privacy interests can exist in personal information even though the information has been made available to the general public"). Additionally, the record is insufficient to determine if the second alleged incident of public disclosure constitutes waiver as it is not clear that those documents are identical to the subject records in this case. In any case, it is not necessary to determine whether a general waiver of FOIA exemptions has occurred because DOJ has not met its burden to prove that the cited exemptions are applicable in the first instance.

## III. *VAUGHN* INDEX

Notwithstanding its request for summary judgment, Akin Gump requests an order mandating the production of a *Vaughn* index. (Pl.'s Reply at 13.) DOJ has not produced a *Vaughn* index and has

relied instead on the Boseker declaration in its place. Due to the paucity of detail provided in the declaration and because the "disclosures here do not measure up to the obligations imposed on an agency in a FOIA action," *Oglesby*, 2007 WL 625852, at *5, summary judgment will not be granted to either party. *See Vaughn*, 484 F.2d at 824 (allowing courts to proceed directly to legal determinations of FOIA exemption applicability only when "the factual nature of the documents were so clearly established on the record"); *see also Campbell v. Dep't of Justice*, 164 F.3d 20, 37 (D.C.Cir.1998) (reversing district court's finding of a FOIA exemption and remanding for a more detailed explanation for the exemption); *Oglesby*, 79 F.3d at 1187 (remanding case to district court because of inadequate *Vaughn* indices); *King v. Dep't of Justice*, 830 F.2d 210, 225 (D.C.Cir.1987) (reversing summary judgment due to inadequate *Vaughn* index and requiring the district court to conduct an in camera inspection of the documents at issue or order a more detailed *Vaughn* index). Although submission of a *Vaughn* index might not be required, DOJ has not met its burden of producing materials that substantiate its use of the claimed exemptions. *Cf. Long*, 450 F.Supp.2d at 53–54 (explaining that summary judgment may be awarded based solely on the affidavits and declarations provided by the agency as long as the justification for invoking the exemptions is specifically detailed).

█ In light of the factual questions surrounding the requested documents, a genuine issue of material fact exists as to the applicability of the claimed FOIA exemptions and the extent to which a substantial invasion of privacy may result from disclosure. Therefore, neither motion for summary judgment is supported by sufficient facts in the record to warrant judgment as a matter of law. The parties' requests for summary judgment will be denied and DOJ will be ordered to produce either a *Vaughn* index or additional declarations providing justification for the claimed exemptions.

### CONCLUSION AND ORDER

Because genuine issues of material fact remain as to whether certain FOIA exemptions should be applied, and because neither party has carried its respective burden of proof on these issues, both parties' motions for summary judgment will be denied. Accordingly, it is hereby

ORDERED that Akin Gump's motion [9] for summary judgment be, and hereby is, DENIED without prejudice. It is further

ORDERED that DOJ's motion [13] for summary judgement be, and hereby is, DENIED without prejudice.

The parties are directed to confer and within 45 days, file a proposed schedule upon which this case shall proceed, including deadlines for DOJ's re-review of records and preparation of either an appropriate *Vaughn* index or an accompanying declaration.